IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, a foreign corporation, | ) ) ) | No. 37959-1-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| 1914 COMMERCE LEASING, LLC, a Texas limited liability company; IRA C. WADDEY, JR. & ANN M. WADDEY, husband and wife; HIGH AND CHERRY LLC, an Ohio limited liability company; HOME SAVINGS BANK aka FIRST FEDERAL BANK OF THE MIDWEST, an Ohio corporation; LINCOLN SQUARE ASSOCIATES 1766 LLC, a Delaware limited liability company; UDG 11th & BURNSIDE, LLC, an Oregon limited liability company; DRI/MAPLE 20th Street Station, LLC, a Delaware limited liability company; BCA Partners, LLC, an Indiana limited liability company; and | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |

No. 37959-1-III
*Great Am. Ins. Co. v. 1914 Commerce Leasing, LLC*


| | |
|---|---|
| BARRY M. DAVIDSON, solely in his capacity as General Receiver of STAY ALFRED, INC., a Delaware corporation, fka ALFREDS AWAY, LLC, a Washington limited liability company, | ) ) ) ) ) ) |
| Defendants, | ) ) |
| TSO CHATTANOOGA DEVELOPMENT, LP, Georgia limited partnership, | ) ) ) ) |
| Petitioner. | ) ) |

PENNELL, J. — TSO Chattanooga Development, LP seeks review of adverse superior court orders denying its motion to dismiss for lack of personal jurisdiction and enjoining litigation in the state of Tennessee. We reverse.

FACTS

TSO Chattanooga is a limited partnership, formed under Georgia law, owning mixed commercial/residential property in Chattanooga, Tennessee. In April 2019, TSO Chattanooga leased its property to a short-term rental startup, Stay Alfred, Inc. Stay Alfred is a Delaware corporation, with its principal place of business in Spokane County, Washington. The two parties entered into a commercial lease agreement (the Lease) and Stay Alfred agreed to make monthly rental payments pursuant to the terms and conditions of the Lease.

2

No. 37959-1-III
*Great Am. Ins. Co. v. 1914 Commerce Leasing, LLC*

Two aspects of the Lease are pertinent to our review. First, the Lease had a force majeure[1] clause that read:

> If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, walk outs, labor troubles, inability to procure materials, failure of power, weather, restrictive governmental laws or regulations, riots, insurrection, terrorism, war or other reason of like nature not the fault of the party delayed in performing work or doing as required under the terms of this Lease, then performance of such act or obligation shall be excused for the period of the delay and the period for cure or performance of any such act shall be extended for a period equivalent to the period of such delay. The provisions of this Section shall not excuse Tenant [Stay Alfred] from prompt payment of rent or any other monetary obligation under this Lease.

Clerks Papers, *Great Am. Ins. Co. v. 1914 Commerce Leasing, LLC*, No. 37877-2-III (CP) at 850-51. Second, the Lease contained a "governing law/jurisdiction" clause that read:

> All rights and remedies of Landlord under this Lease shall be cumulative, and none shall exclude any other rights or remedies allowed by law. All the terms hereof shall be construed according to the laws of the State of Tennessee. Any action to enforce this Lease must be filed in the state or federal courts in Hamilton County, Tennessee, where the Premises is located.

---

[1] Force Majeure is French for a superior force. In American law it is defined as "[a]n event or effect that can be neither anticipated nor controlled; esp., an unexpected event that prevents someone from doing or completing something that he or she had agreed or officially planned to do. The term includes both acts of nature (e.g., floods and hurricanes) and acts of people (e.g., riots, strikes, and wars)." Bryan A. Garner, BLACK'S LAW DICTIONARY (11th ed. 2019).

3

*Id*. at 850.

Great American Insurance Company issued a lease guaranty bond (the Bond) on behalf of Stay Alfred with respect to the Lease. The Bond provided that Great American was bound to TSO Chattanooga for the sum of two months' unpaid rent under the Lease, not to exceed $187,500.00. The Bond also contained a force majeure clause. However, the wording of the Bond's force majeure clause differed from that in the Lease:

> If said Principal [Stay Alfred] fails to make the monthly Base Rent payment(s) required in the Agreement due to a Force Majeure event, then said Surety [Great American] is not liable for any payment(s) then due subsequent to and arising, directly or indirectly, from the Force Majeure event.

CP at 871.

In April 2018, Stay Alfred and Great American entered into an indemnity agreement relating to the issuance of the Bond. Stay Alfred also deposited the sum of $803,029 with Great American as collateral for the TSO Chattanooga Bond and other similar lease agreement bonds pertaining to other properties. According to the indemnity agreement, Great American must return any portion of Stay Alfred's cash deposit that is not consumed by losses or expenses incurred by Great American in connection with the Bond claims.

4

In April and May of 2020, Stay Alfred failed to make its monthly rental payment to TSO Chattanooga as required by the Lease. Stay Alfred's default was purportedly related to the COVID-19 pandemic. The amount of unpaid rent totaled $159,468. On May 18, 2020, TSO Chattanooga made a claim against the Bond for the unpaid rent due under the Lease. Great American refused payment.

On May 26, 2020, Stay Alfred petitioned in Spokane County Superior Court for appointment of a general receiver and executed an assignment for the benefit of creditors pursuant to Washington's receivership statute, chapter 7.60 RCW.

On June 8, 2020, TSO Chattanooga filed a proof of claim in Stay Alfred's receivership case in Spokane County Superior Court. TSO Chattanooga demanded all money owed on the Lease, totaling $4,378,566 as of May 26, 2020. CP 439. The proof of claim specified it was not a waiver or release of any claim of lack of venue or jurisdiction.

On June 23, 2020, Great American filed an adjunct complaint for declaratory judgment in Spokane County Superior Court against TSO Chattanooga and a number of similarly situated companies having rental relationships with Stay Alfred. Great American asked the superior court to determine whether the Bond's force majeure clause excused its performance and liability under the Bond. Great American did not identify any

5

additional bases for avoiding liability. Great American requested the superior court enter a declaratory judgment finding it was not liable to TSO Chattanooga under the Bond.

On July 21, 2020, TSO Chattanooga filed suit against Great American in Hamilton County, Tennessee, seeking enforcement of the Bond and recovery of the amounts due under the Bond. Great American successfully removed the Tennessee suit to federal court.

On September 1, 2020, Great American filed a motion in Spokane County to enjoin TSO Chattanooga from pursuing its lawsuit against Great American in Tennessee until the receivership court rendered a final disposition and ruling on the declaratory judgment action. Soon after, TSO Chattanooga contested personal jurisdiction and filed a motion to dismiss Great American's declaratory judgment claim.

In support of Great American's motion to enjoin, the general receiver of Stay Alfred (the Receiver), submitted a declaration clarifying how bond claims against Great American affected the receivership. The Receiver acknowledged the indemnity agreement between Stay Alfred and Great American and explained:

> 5.    To the extent that Great American suffers a loss or expense as a result of the Bond Claims asserted against the lease guarantee bonds issued by Great American, I understand that Great American will assert a claim against the receivership estate as a secured creditor to the extent of those losses and expenses. Great American's secured claim against the

6

receivership estate would reduce the amount of estate assets available for distribution to other creditors.

6.    As the Receiver for Stay Alfred, it is also my understanding that Great American is in the possession of cash collateral that Stay Alfred posted as a source of potential reimbursement to Great American for losses and expenses arising out of the Bond Claims.

7.    I further understand that any remaining cash collateral would become available to the receivership estate in the event it is not consumed by losses or expenses, including any allowable attorneys' fees and costs, incurred by Great American in connection with the Bond Claims. Thus, to the extent Great American suffers a loss or expense in connection with the Bond Claims, it may result in a reduction of assets available to the receivership estate.

CP at 444-45.

In October 2020, Stay Alfred answered Great American's complaint for declaratory judgment, asserted affirmative defenses, and made a counterclaim against Great American seeking declaratory judgment relief as follows:

The rights and obligations of Stay Alfred and [Great American] to the Cash Deposit regarding the extent to which the Cash Deposit is not consumed by allowable losses or expenses arising from the Bond Claims, including any allowable attorneys' fees and costs incurred by [Great American] in connection therewith.

CP at 515.

The Spokane County Superior Court subsequently granted Great American's motion to enjoin TSO Chattanooga from maintaining any action against Great American relating to the Bond outside of the declaratory judgment action, pursuant

7

to RCW 7.60.055(1) and RCW 7.60 et seq., until the declaratory judgment action was resolved by way of final order or judgment. The court found venue and jurisdiction for Great American's declaratory judgment action was proper and exclusive in Spokane County Superior Court, pursuant to RCW 7.60.055(1) and RCW 7.60, et seq. The Spokane court rejected TSO Chattanooga's claim regarding lack of personal jurisdiction, reasoning TSO Chattanooga had sufficient contacts with the State of Washington and that Washington's receivership act gave the court in rem jurisdiction over property of the receivership.

TSO Chattanooga moved in the superior court to certify the personal jurisdiction decision for review by this court pursuant to RAP 2.3(b)(4). The superior court granted certification and a commissioner of this court granted discretionary review of the order denying the motion to dismiss and granting Great American's motion to enjoin out-of-state actions.

ANALYSIS

*Personal jurisdiction*

Washington courts can exercise personal jurisdiction over nonresident defendants to the extent permitted by the federal due process clause. *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 766-67, 783 P.2d 78 (1989). When it comes to personal

8

jurisdiction, federal due process is based on the concept of minimum contacts. Specifically, the issue is whether a nonresident defendant has sufficient minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Daimler AG v. Bauman*, 571 U.S. 117, 126, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Our review of personal jurisdiction issues is de novo. *Future Select Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 963, 331 P.3d 29 (2014).

There are two categories of personal jurisdiction, general and specific. General jurisdiction applies when a nonresident does substantial and consistent business in the state, such that it is "'essentially at home'" in the state. *Ford Motor Co. v. Montana Eighth Judicial District Court*, __ U.S. __, 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). As the name implies, specific jurisdiction is case specific. A Washington court can gain specific jurisdiction over a nonresident defendant if the defendant has interacted with the state in a way that is related to the plaintiff's legal claims. *See id.* at 1025.

In this case, there is no claim of general jurisdiction. Instead, Great American's

9

No. 37959-1-III
*Great Am. Ins. Co. v. 1914 Commerce Leasing, LLC*

argument for jurisdiction over TSO Chattanooga is premised on a theory of specific

jurisdiction based on TSO Chattanooga's relationship with Stay Alfred.[2] We therefore

focus our personal jurisdiction discussion on the topic of specific jurisdiction as it relates

to the interactions between TSO Chattanooga and Stay Alfred.

Three factors are relevant to determining specific jurisdiction pursuant to federal

due process and Washington's long arm statute:[3]

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
> (2) the cause of action must arise from, or be connected with, such act or transaction; and
> (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Shute v. Carnival Cruise Lines*, 113 Wn.2d at 767. *See also Downing v. Losvar*, No.

36298-1-III, slip op. at 21-22 (Wash. Ct. App. Apr. 14, 2022),

https://www.courts.wa.gov/opinions/pdf/362981_ord.pdf.

---

[2] There is no claim that the relationship between TSO Chattanooga and Great American gives rise to personal jurisdiction.

[3] RCW 4.28.185.

10

None of the three factors weigh in favor of finding specific jurisdiction over TSO Chattanooga. The only connection TSO Chattanooga has with Washington is the fact that Stay Alfred has its principal place of business in Washington. TSO Chattanooga and Stay Alfred did not engage in business in Washington and their contractual relationship arose from leased property in Tennessee. The dispute between TSO Chattanooga and Stay Alfred did not transpire in Washington; the nonpayment of rent occurred in Tennessee and was purportedly caused by business disruptions in Tennessee related to the impact of the COVID-19 pandemic. And notions of fair play and substantial justice do not tie TSO Chattanooga to Washington, particularly given the Lease specified that all disputes were to be resolved in the state of Tennessee.

Great American fails to cite any cases finding personal jurisdiction over an out-of-state landlord-tenant dispute based simply on the fact that a corporate tenant has its home office in Washington. Where no authority for an assertion is made, we may presume none exists. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). The fact that TSO Chattanooga had a relationship with Stay Alfred, who unilaterally chose to be located in the state of Washington, is insufficient to confer personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ("the plaintiff cannot be the only link between the defendant and the forum"). We

11

therefore disagree with the superior court's assessment that TSO Chattanooga is subject to personal jurisdiction in Washington based on its contractual interactions with Stay Alfred.

*In rem and receivership jurisdiction*

Apart from arguing personal jurisdiction, Great American claims the Spokane Court had in rem jurisdiction because the Bond at issue in this case is property of the estate and the receivership court has jurisdiction over Stay Alfred's estate property.

Great American's argument misunderstands the nature of a bond. The concept of a two party "[o]wner-versus-lien-claimant relationship" does not apply in the context of a bond claim. *Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*, 189 Wn.2d 840, 849, 408 P.3d 691 (2018). A surety relationship is a three-party relationship involving a surety, principal, and obligee. *Id*. Pursuant to this relationship, the surety agrees to answer for the debt of default of the principal. *Id*. Upon default, the surety must make payment to the obligee directly. The principal has no right to the funds. The whole point of a bond is to afford the obligee a certain amount of recovery for breach by the principal without the concern that recovery will be limited should the principal become bankrupt or insolvent. *Id*. at 856. If the surety pays on the bond to the obligee, the surety may seek recovery from the principal pursuant to an indemnity agreement. However, any such claim is separate

12

from the obligee's claim on the Bond. *Id*. A bond claimant may make a claim against the surety without joining the bond principal as a necessary party. *Id*.

We agree with Great American that TSO Chattanooga's bond claim may impact the property at issue in Stay Alfred's receivership proceeding. If TSO Chattanooga fails in its bond claim against Great American, then the funds used by Stay Alfred to secure the Bond will likely be released and made available to the estate for satisfaction of creditor claims. Alternatively, if TSO Chattanooga succeeds on its bond claim, then Great American will likely seek indemnification from Stay Alfred, retain Stay Alfred's security deposit, and thereby effectively reduce estate funds. But these alternative conditions turn on the contractual relationship between Great American and Stay Alfred. They do not alter the surety relationship between TSO Chattanooga and Great American.

Given the impact of the parties' dispute on property of the estate of Stay Alfred, it might have made sense for the parties' dispute to be decided under Washington's broad receivership statute, had personal jurisdiction not been at issue. *See* RCW 7.60.055(1) (The receivership court has subject matter jurisdiction over "all controversies relating to the collection, preservation, application and distribution of" estate property.). But personal jurisdiction is at issue here. The receivership statute's conferral of subject matter jurisdiction does not eliminate a nonresident defendant's right to challenge personal

13

jurisdiction. *See Hanson v. Denckla*, 357 U.S. 235, 254, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (a court does not acquire personal jurisdiction "by being the 'center of gravity' of the controversy, or the most convenient location for litigation"). Despite the broad powers conferred by the receivership statute, the Spokane County Superior Court lacked personal jurisdiction over TSO Chattanooga.

*Consent to jurisdiction*

Great American's final argument is that TSO Chattanooga consented to Washington's jurisdiction by filing a proof of claim in the receivership action. This is Great American's strongest argument in favor of personal jurisdiction. We nevertheless reject its application.

A Washington court can exercise personal jurisdiction over a nonresident defendant based on consent or waiver. *Kysar v. Lambert*, 76 Wn. App. 470, 484, 887 P.2d 431 (1995). A party waives their lack of personal jurisdiction claim if, before the court rules, they request affirmative relief or otherwise consent, expressly or impliedly, to the court's personal jurisdiction. *In re Marriage of Steele*, 90 Wn. App. 992, 997-98, 957 P.2d 247 (1998).

By filing a proof of claim with the Spokane receivership court, TSO Chattanooga likely consented to Washington jurisdiction over the issue of Stay Alfred's liability for

breach of the Lease. TSO Chattanooga may have also consented to jurisdiction over any related counterclaims held by Stay Alfred against TSO Chattanooga. *See In re PNP Holdings Corp.*, 184 B.R. 805, 806 (B.A.P. 9th Cir. 1995). But these conclusions do not resolve the issue of whether TSO Chattanooga has consented to Washington's resolution of its rights under the Bond.

The issue of liability under the Bond is distinct from liability under the Lease. As framed in Great American's complaint for declaratory judgment, Great American's liability to TSO Chattanooga turns solely on the applicability of the Bond's force majeure clause. Stay Alfred's lease does not contain a similar clause. The force majeure clause in the Bond provides Great American with a complete defense to payment. But the force majeure clause in the Lease does not relieve Stay Alfred from any financial obligations.

The nature of the parties' force majeure bond dispute is one that counsels against a waiver of personal jurisdiction. Deciding whether Great American is relieved from payment on the Bond based on a force majeure requires the resolution of complex, highly local facts. The business impacts of the COVID-19 pandemic have varied by jurisdiction. Washington businesses were subject to stay at home orders that may not have been in place in Tennessee. The impact of COVID-19 on Stay Alfred's ability to find short-term tenants for TSO Chattanooga's building turns on facts that occurred in Tennessee, not

Washington. TSO Chattanooga retains a significant interest in ensuring that resolution of Great American's force majeure claim is decided by a Tennessee court.

Great American points out that its liability on the Bond does not turn solely on the force majeure clause, it also depends on whether Stay Alfred has violated the terms of the Lease. This point is valid, but it does not change our analysis. For one thing, the only defense to nonpayment of the Bond pleaded by Great American pertains to the force majeure clause. But even if Great American had asserted a broader basis for avoiding liability, the fact remains that the Bond agreement is distinct from the Lease agreement. Because liability under the Bond is distinct from liability under the Lease, any waiver of personal jurisdiction over litigation involving the Lease does not extend to litigation over the Bond.

TSO Chattanooga has never affirmatively done anything to choose Washington as the arbiter of its rights under the Bond. The fact that Stay Alfred's lease liability to TSO Chattanooga will be resolved in Washington is the result of Stay Alfred's decision to file for receivership in Washington and TSO Chattanooga's choice to file a proof of claim. In other words, TSO Chattanooga has done nothing to avail itself of Washington's laws beyond consenting to the receivership court's adjudication of the Lease between TSO

Chattanooga and Stay Alfred. Waiver of personal jurisdiction does not apply in the context of the Bond.

*Federal court injunctions*

The Spokane County Superior Court lacked personal jurisdiction over TSO Chattanooga and in rem jurisdiction over the Bond claimed by TSO Chattanooga. The court therefore lacked authority to enjoin Tennessee courts from addressing TSO Chattanooga's claim against Great American for payment on the Bond. The injunction order must therefore be reversed.

## CONCLUSION

The orders on review are reversed. Great American's claim against TSO Chattanooga must be reversed based on lack of personal or in rem jurisdiction. Similarly, the superior court's injunction restraining TSO's Chattanooga's suit against Great American for payment of the Bond is reversed, as the superior court does not have jurisdiction over the Bond. TSO Chattanooga's motion to supplement the appellate record is denied as moot.

No. 37959-1-III
*Great Am. Ins. Co. v. 1914 Commerce Leasing, LLC*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:


_____
Fearing, J.

_____
Staab, J.